1

```
 1              COURT OF COMMON PLEAS

 2             HAMILTON COUNTY, OHIO

 3                  - - -

 4   STATE OF OHIO,          :

 5           Plaintiff,      :

 6       Vs.                 :  Case No. B-9702196

 7   LOUIS MERRIWEATHER,     :

 8
                Defendant.   :
 9

10                  - - -

11       COMPLETE TRANSCRIPT OF PROCEEDINGS

12                  - - -

13
         BRADLEY GREENBERG, ESQ.
14
                 On behalf of the Plaintiff.
15
         DANIEL F. BURKE, ESQ.
16
                 On behalf of the Defendant.
17
                    - - -
18

19           BE IT REMEMBERED that upon the

20   hearing of this cause, on June 18, 1997, before

21   the Honorable Robert Kraft, Judge of the said

22   Court of Common Pleas, the following proceedings

23   were had.

24

25
```



2

```
 1
 2                        E-X-H-I-B-I-T-S
 3
 4   COURT'S EXHIBIT 1:
 5                 VICTIM IMPACT STATEMENT
 6                 ARRESTING OFFICER'S STATEMENT
 7                 PRESENTENCE REPORT
 8                 CLINIC EVALUATION
 9                 MARKED AT PAGE 19, LINE 24
10                 (ALL EXHIBITS IN THE CUSTODY OF THE
11            EXHIBIT CLERK.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1              MORNING SESSION, JUNE 18, 2004
 2                  P-R-O-C-E-E-D-I-N-G-S
 3              THE COURT:  I have State of Ohio v.
 4         Louis Merriweather, B-9702196;
 5              Mr. Daniel Burke, Jr., for the
 6         defendant.
 7              And this matter is on for sentencing
 8         this morning.
 9              And, Mr.  Burke, have you read the
10         various reports generated by the Probation
11         Department and the clinic?
12              MR. BURKE:  Yes, I have, your Honor.
13              THE COURT:  All right.  Mr.
14         Merriweather, on May 15, 1997, you entered
15         a plea of guilty in Counts 1 and 2 as
16         charged.
17              This is a rape charge, described as
18         felony of the first degree, carrying a
19         possible penalty in jail of anywhere from
20         three to ten years.
21              Factually, this is a victim under the
22         age of 13, is it?
23              MR. BURKE:  That's correct, Judge.
24              THE COURT:  No force being used an as
25         a representation of the factual pattern.
```

```
 1          This is a sentence under the Senate Bill 2
 2          provisions of the code for offenses
 3          occurring after July 1, 1996.
 4              There is a presumption of prison in
 5          this matter.  And as part of the plea
 6          bargain, Counts 3 and 4 were dismissed.
 7              It was also recognized that on the
 8          basis of his history and the plea hearing,
 9          that he would be subject to a sexual
10          predator designation, which, if found
11          affirmatively on the facts, would carry the
12          requirement of lifetime reporting, among
13          other statutory requirements, if and when
14          he is released from prison.
15              Have I stated everything there, Mr.
16          Burke?
17              MR. BURKE:  That's correct, Judge.
18              THE COURT:  Now, sir, are you ready
19          to proceed with sentencing this morning?
20              THE DEFENDANT:  Yes, sir.
21              THE COURT:  And, Mr. Burke, then, is
22          there anything that you want to say before
23          sentence is passed?
24              MR. BURKE:  Judge, yes, I have a few
25          things.
```

```
 1                    I thank the Court for ordering a

 2          presentence report and the evaluation by

 3          Dr. Chiappone.

 4                    I think the Court is aware of, and I

 5          submitted to the Court at the time of plea,

 6          Mr. Merriweather's complete confession to

 7          the police officers.

 8                    I think that's important.  And the

 9          reason that I submitted it for review was

10          that he admitted committing these offenses.

11          There is always sorrow or guilt in

12          committing these offenses.

13                    I think if you read his statement to

14          the police, there is an indication that he

15          has some psychiatric problems.  I think

16          because of a prior offense in '91, and then

17          this follow up in '95 or '96 or late '96,

18          early '97, that this man, Mr. Merriweather,

19          needed help.

20                    He has had psychiatric problems, as

21          he tells me, and he has had problems for

22          the last 27, 28 years.

23                    In the interview that Dr. Chiappone

24          conducted with his mother, who is present

25          in the courtroom today, Lillian Mullins,
```

```
 1          and even himself, I think there are all
 2          kinds of statements in here as to the
 3          character and the guilt.
 4               The actions of this man regarding
 5          this child are characteristic of some
 6          psychiatric problems, and treatment is
 7          necessary for this sexual behavior, and I
 8          think Dr. Chiappone suggests that.
 9               He is suggesting in his conclusion
10          that the POLARIS program in the Ohio
11          Department of Corrections, which is an
12          excellent program.
13               I am well aware of the POLARIS
14          program.  A couple of my clients have been
15          there in the past.  It's at least a two-
16          year program.  If completed, the success
17          rate is extremely high.
18               His mother and sister both agree to
19          the conclusion that he does need an inhouse
20          treatment facility, which is mandatory, to
21          help him get some sexual treatment for his
22          sexual behavior.
23               Mr. Merriweather, himself, basically
24          said that to the psychiatrist who talked to
25          him, that he needs help, and the
```

```
 1          psychiatrist correctly analyzed his problem
 2          and he has told me that.  In fact, he wrote
 3          a note to me that Dr. Chiappone recognized
 4          in ten minutes, after talking to me, what
 5          my problems are, and that treatment
 6          probably needs to be done in this
 7          particular case.
 8              I would ask the Court to consider Mr.
 9          Merriweather's statements to the police
10          officers where he cooperated in a full
11          statement.  His sorrow and his guilt for
12          doing these things is stated in there; his
13          conflict in his own mind, with not only
14          what he is doing, but his inability to stop
15          himself.  I think these are clear
16          indications of a sexual problem and sexual
17          behavior problem which needs extreme
18          treatment, so he can be somebody who is
19          released into the community eventually and
20          do something constructive, instead of
21          having these problems hanging over his
22          head.
23              I would ask the Court to consider
24          sentencing in this particular case, and I
25          know the Court does not sentence anybody to
```

8

```
 1          the POLARIS program, but I know the Court
 2          can send documents to the Ohio Department
 3          of Corrections in this matter, where they
 4          would enter him in the POLARIS program,
 5          which I said earlier is a good program.
 6               I think he needs help.  He's a man
 7          that has been cooperative with me.  I find
 8          him to be of an average intelligence level.
 9          Even in expressing things to me, he knows
10          he can't stop what he is doing to the point
11          where he needs help.  It's a shame that he
12          has to be in this situation, and I know he
13          feels bad for the victim in this matter,
14          and I would ask the Court to consider
15          helping him in the best way, and that it's
16          in his best interest and the best interest
17          of society to help him.
18               Thank you.
19               THE COURT:  Do you want to add
20          anything, sir, to what your attorney has
21          said?
22               THE DEFENDANT:  Yes, your Honor.
23               I am taking medication that makes my
24          mouth dry.
25               I want to say, your Honor, I have
```

```
 1          been dealing with this problem 28 years.  I

 2          have been to the Veteran's Commission,

 3          asking for help.  Nobody would help me.

 4              All of a sudden I come in this case

 5          that's a moral case, that I shouldn't be

 6          here for if I had help.

 7              My problems are derived from being in

 8          Vietnam at an early age.  Can you imagine

 9          suffering and getting no help whatever?  So

10          now that I can get help, I have to go to

11          prison.  I have been in prison for two

12          years.  Mentally, I have been there for 28

13          years.

14              THE COURT:  Anything else, sir?

15              THE DEFENDANT:  No, sir.

16              THE COURT:  Did you say somebody in

17          the family is here?

18              What is your name?

19              THE DEFENDANT'S MOTHER:  Betty

20          Merriweather.

21              THE COURT:  What relationship are you

22          to him?

23              THE DEFENDANT'S MOTHER:  It's my son.

24              THE COURT:  Is there something you

25          want to say?
```

```
 1                    THE DEFENDANT'S MOTHER:  I want to
 2          say my son needs help.  If there is any way
 3          you can help, I would like for you to.  He
 4          has never been a sassy child -- you know,
 5          teenage mischievous -- but he has always
 6          been very good, and his problem started --
 7          his behavior changed after he came out of
 8          the service.
 9                    THE COURT:  Did he come back to live
10          with you then?
11                    THE DEFENDANT'S MOTHER:  For a while
12          he did.
13                    THE COURT:  How old was he then?
14                    THE DEFENDANT'S MOTHER:  In his 20s,
15          I think.  He went in the service at 16.
16                    THE COURT:  How long did he stay with
17          you?
18                    THE DEFENDANT'S MOTHER:  Four years.
19                    THE COURT:  Did you notice anything
20          different about him?
21                    THE DEFENDANT'S MOTHER:  The only
22          thing was his behavior.  He was a little
23          bit quicker to get angry, never violently
24          angry.  His temper, you know.  He couldn't
25          handle -- say you got mad at him about
```

```
 1            something.  He was kind of quick to -- his
 2            temper was a little bad, but not to the
 3            point that he would fight.  He would just
 4            walk away.  He wouldn't talk.  He would
 5            just walk away.  He never talked about his
 6            problem.  He never talked about what
 7            happened to him in the service.  Only one
 8            time he did write me that, "Mom, we are
 9            killing kids over here, and they were his
10            age.  That was it.
11                 Other than that, he never talked
12            about it.  If I would say something to him
13            about it, he would clam up.  He wouldn't
14            say nothing.
15                 THE COURT:  Did he ever show any of
16            evidence of the kind of conduct that he is
17            here before me for?
18                 THE DEFENDANT'S MOTHER:  Not in front
19            of me, because he doesn't smoke, drink,
20            curse, or anything in front of me.  Any
21            behavior he would have like that, he would
22            never show it in front of me.
23                 THE COURT:  You were surprised to
24            hear the kind of things that he has done?
25                 THE DEFENDANT'S MOTHER:  Yes, and
```

```
 1          then he comes to me.  He told me, "Mom, I
 2          need help."
 3               THE COURT:  How long ago was that?
 4               THE DEFENDANT'S MOTHER:  It's been
 5          about since he has been in here, since they
 6          picked him up.  That's the first time he
 7          ever really broke down and said, "Mom, I
 8          need help."
 9               THE COURT:  All right.  Thank you.
10               MR. BURKE:  Judge, his sister would
11          like to speak.
12               THE COURT:  What is your name?
13               MS. MULLINS:  Lillian Mullins,
14          M-u-l-l-i-n-s.
15               THE COURT:  Real loud.
16               THE WITNESS:  Lillian Mullins.
17               THE COURT:  What relationship are
18          you?
19               MS. MULLINS:  Sister.  He is my
20          brother,
21               THE COURT:  What did you want to tell
22          me?
23               MS. MULLINS:  I want to say basically
24          the same thing she said.  He sort of
25          presented himself differently around us.  I
```

```
 1          mean, it was like he had two different
 2          personalities.  We didn't know of this,
 3          what brought him here.  When he was around
 4          us, he was a different person.  He would go
 5          off, but he wouldn't go off to a point
 6          where he would like hit you or anything.
 7          He would, I guess, mouth at you.  I guess
 8          that's the only word I want to say, but he
 9          wouldn't show any signs that he was a child
10          molester or anything like that.
11                I always thought that he had a good
12          attitude around kids.  I mean, with my own
13          children, he had a good relationship with
14          my children.  They never said that he was
15          anything else except for a perfect uncle.
16          I mean, you know, and --
17                THE COURT:  Have you questioned him?
18          How old are your children?
19                MS. MULLINS:  My children are 32 and
20          25, so they might have been too old at the
21          time.
22                THE COURT:  Too old after he got out
23          of the service?
24                MS. MULLINS:  My children were born
25          in '65, and the one was born in '71.  He
```

```
 1          was around the one that was the girl that
 2          was born in '71 more so than my son.
 3                 THE COURT:  Have you talked to her
 4          about whether or not there's been any
 5          experiences with him?
 6                 MS. MULLINS:  Yes, I have.
 7                 THE COURT:  She says there hasn't?
 8                 MS. MULLINS:  There has not been.
 9                 THE COURT:  She seems to be doing all
10          right?
11                 MS. MULLINS:  She seems to be doing
12          fine.
13                 THE COURT:  Anything else you would
14          like to tell me?
15                 MS. MULLINS:  I just feel like he
16          needs help, and I don't really know how to
17          get him help.  He needs help.  Basically,
18          he needs help.
19                 THE COURT:  All right.  Thank you.
20                 Now, are you receiving a Veteran's
21          pension, then?
22                 THE DEFENDANT:  Yes, I am, your
23          Honor.  It's ten percent, $90 a month.
24                 THE COURT:  All right.  Anything, Mr.
25          Prosecutor?
```

```
 1                 MR. GREENBERG:  I have nothing to
 2        add, your Honor.
 3                 THE COURT:  How about the Probation
 4        Department?
 5                 THE PROBATION OFFICER:  Your Honor,
 6        the Ohio Department of Corrections, they
 7        just started a new program in Madison, a
 8        sexual offenders program.  I think that
 9        program will be appropriate for him for a
10        lengthy period of time.
11                 THE COURT:  That's different than
12        what Dr. Chiappone described as the POLARIS
13        program.
14                 THE PROBATION OFFICER:  A bunch of
15        probationers went last week to that
16        program.  It's excellent.  It is in
17        Chillicothe.  It's with the Ohio Department
18        of Corrections, and he needs to stay there
19        for a lengthy period of time.
20                 THE COURT:  Mr. Prosecutor, is the
21        victim or a member of the victims's family
22        present today?
23                 MR. GREENBERG:  No, your Honor.
24                 THE COURT:  Well, if your experience
25        in the military had anything to do with
```

16

```
 1          what you have done with your life since,

 2          it's a tragedy.

 3               If Dr. Chiappone is giving you some

 4          insight and understanding of what you need

 5          to do to try to help yourself, you, of

 6          course, should be grateful that somebody

 7          has finally discovered something that might

 8          give you hope for the future.   Still you

 9          need to be punished for what you have done,

10          sir, which is, of course, unacceptable in

11          society, and we have to recognize that

12          somebody has been injured in some way, and

13          the person who does it has to pay the

14          penalty for it, and, you committed the kind

15          of crimes that are just absolutely

16          unacceptable in society.

17               We have to proceed with sentencing.

18          If there is nothing else at this time, we

19          also have to recognize the need to proceed

20          with the determination of whether or not he

21          is classified as a sexual predator or an

22          individual sexual offender or sexually

23          oriented offender, as set forth in the Ohio

24          Revised Code Section, 2950.02, and

25          subsequent sections.
```

```
 1              Mr. Burke, you have looked over the

 2         form that we received from the Attorney

 3         General's Office some time ago?

 4              MR. BURKE:  Yes.

 5              THE COURT:  Have you reviewed that

 6         with the defendant?

 7              MR. BURKE:  We have reviewed it to

 8         the point where I told him on this

 9         particular case that he would have to

10         report.  But I told him after he received

11         treatment, he would have to report to the

12         authorities when he was released.  I didn't

13         go over each of the qualifications or

14         situations here, but I did explain to him

15         about he had to report.

16              And I told him at the time, I said --

17         I know the offenses are what they are --

18         but once the treatment would be over, then

19         he would have to report wherever he is

20         going to live, so they know what is going

21         on with this man's life.

22              THE COURT:  Mr. Prosecutor, as far as

23         the determination is concerned, can we

24         place on the record the information

25         provided in the presentence report
```

      1          concerning prior convictions for sexual
      2          offenses.  Is that going to be adequate, do
      3          you think?
      4              MR. GREENBERG:  I think it would.  I
      5          think we can enter into a stipulation to
      6          the information in the presentence
      7          investigation.  We can stipulate to the
      8          defendant's record, and we can stipulate to
      9          the proceedings when the defendant entered
     10          his guilty plea.
     11              THE COURT:  Mr. Burke, would you
     12          concur in that without further evidence in
     13          the record that information provided in the
     14          presentence report would be acceptable?
     15              MR. BURKE:  As long as the
     16          presentence report, Judge, that you're
     17          accepting includes his treatment -- clinic
     18          evaluation.  I would like that to be
     19          included as evidence.
     20              THE COURT:  That would be an
     21          additional exhibit.  I think what we ought
     22          to do is mark the presentence report.
     23              Did you get a copy of that
     24          presentence report, or not?
     25              MR. BURKE:  No, Judge, I got a copy

```
 1          of the clinic report.
 2                  THE COURT:  Do you have an extra copy
 3          of the presentence report?  Do you have an
 4          extra copy?
 5                  All right.  What I would like to do
 6          is have the presentence report, the victim
 7          impact statement, and the arresting
 8          officer's statement and the clinic report
 9          jointly marked as Exhibit 1 for the purpose
10          of the record.  And do you have the clinic
11          on that, too?
12                  MR. BURKE:  No, Judge, there is not a
13          clinic.
14                  THE COURT:  All right.
15                  MR. BURKE:  Now, we have clinic,
16          Judge.
17                  THE COURT:  Staple those all
18          together.  Let the reporter mark them as
19          Exhibit 1 for the purpose of the sexual
20          offenders's hearing.
21                  (Court's Exhibit Number 1 was
22          marked.)
23                  MR. GREENBERG:  Your Honor, it's my
24          understanding that there was not going to
25          be a hearing on this issue.  It's my
```

1          understanding that the defendant pled

2          guilty to Count 1, Count 2, and he pled

3          guilty to the specifications, that he is a

4          sexually violent predator.  That's what the

5          plea bargain was.  And we dismissed Count 3

6          and Count 4 with the specifications.

7              THE COURT:  Okay.  What does that

8          have to do with the requirement on the

9          determination on the obligations post

10         release?  Does it have anything to do with

11         that?

12             MR. GREENBERG:  Well, I'm just saying

13         that I expect the Court to make that

14         finding and not consider the lesser

15         classifications of sexually motivated

16         offender or habitual offender.

17             THE COURT:  I think, even though we

18         have the sexual predator specification in

19         the indictment -- those are in the

20         indictment, right?

21             MR. GREENBERG:  Yes, sir,

22             THE COURT:  I think we may still have

23         to make a separate finding.

24             Doesn't the specification in the

25         indictment simply make the sentences

```
 1          mandatory?
 2                  MR. BURKE:  No, your Honor.
 3                  MR. GREENBERG:  No.
 4                  MR. BURKE:  There is no mandatory
 5          time required.
 6                  THE COURT:  That's what I mean.  The
 7          sexual predator specifications don't do
 8          anything to the underlying sentences?
 9                  MR. GREENBERG:  No.
10                  THE COURT:  What do you think, Mr.
11          Burke; I still have to make a separate
12          finding?
13                  MR. BURKE:  I think you have to make
14          a separate finding, and I understand what
15          Mr. Greenberg is saying.
16                  THE COURT:  There needs to be no
17          further evidence presented?
18                  MR. GREENBERG:  Right, because he
19          pled guilty to the specifications.
20                  THE COURT:  I would still be more
21          comfortable if we have in the record what
22          we have now marked as Exhibit 1 as part of
23          the sentencing proceedings, and I'll agree
24          with you on the other, that we don't have
25          to have any further testimony or evidence
```

1           presented.

2                   Looking at my notes on the plea

3           bargain, I don't believe there was anything

4           else included in the plea bargain, was

5           there, Mr. Burke?

6                   MR. BURKE:  No, your Honor.

7                   THE COURT:  Am I correct that the

8           same victim is identified in both Counts 1

9           and 2; is that right?

10                  MR. BURKE:  That's correct, Judge.

11                  THE COURT:  What were the dates on

12          those two incidents?

13                  MR. GREENBERG:  The first count, an

14          unspecified date in February,

15                  THE COURT:  What year?

16                  MR. GREENBERG:  1997.

17                  THE COURT:  And the other?

18                  MR. GREENBERG:  Also an unspecified

19          date in February of 1997.

20                  THE COURT:  Okay.  All right, then,

21          if there is nothing further to offer, the

22          Court will proceed by advising the

23          defendant that he has certain

24          constitutional rights of appeal.

25                  If you're not satisfied with the

```
 1              proceedings of the Court, and you wish to
 2              enter an appeal, sir, you're instructed to
 3              tell your attorney immediately.
 4                   If you cannot afford an attorney, the
 5              Court has the duty to provide you with an
 6              attorney and also provide you with a
 7              written copy of the proceedings at no cost
 8              to you.  Do you understand that, sir?
 9                   THE DEFENDANT:  Yes, your Honor.
10                   THE COURT:  All right.  The sentence
11              of the Court, then, will be that the
12              defendant be ordered confined to the
13              Department of Corrections of the State of
14              Ohio on Count 1 and Count 2 for ten years
15              on each count;
16                   You are ordered to pay the cost of
17              prosecution;
18                   The sentences are to run
19              concurrently.  And he is to be credited
20              with days locked up.
21                   He has been locked up since when?
22                   MR. BURKE:  He has been locked up
23              since March 23rd.
24                   THE COURT:  March 23, 1997, until
25              today, which is 6/18/97.
```

```
 1                    Also, at this time, I am making a
 2          finding, per the plea, that he is
 3          classified as a sexual predator, and that
 4          he will be required, when released, to meet
 5          the lifetime requirement of residence
 6          verification, as provided in the statute.
 7                    And, Mr. Burke, this form has to be
 8          endorsed by you and your client as part of
 9          the proceedings, as the Court understands
10          it.
11                    THE COURT:  Have you got the form
12          that I asked you to look at?
13                    MR. BURKE:  Yes, Judge, I do.
14                    THE COURT:  All right.  I would like
15          to have that endorsed at this time.  Does
16          the defendant have a Social Security
17          number?
18                    THE DEFENDANT:  Yes, your Honor.
19                    THE COURT:  What is your Social
20          Security number, sir?
21                    THE DEFENDANT:  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.
22                    THE COURT:  0860?
23                    THE DEFENDANT:  Your Honor, may I say
24          something before this?
25                    THE COURT:  Yes, sir.
```

```
 1                 THE DEFENDANT:  Your Honor, as I said
 2           before, I have been in prison in my mind
 3           for 28 years.  Now, for almost the last 90
 4           days, I have been able to see some daylight
 5           and feel good about myself.  And, your
 6           Honor, I would ask this Court to please
 7           reconsider the sentence.  You know what I
 8           would say?  Two years in the program.  I'm
 9           I know it would help me.  I, for 28 years,
10           I have not had a life.
11                 I have not built a concrete life
12           because of my mental condition.  Now I have
13           an opportunity to build one, and I beg this
14           Court for that opportunity to build a life,
15           a constructive life where I know what I am
16           doing, and I know which way I have been.  I
17           have been confused for 28 years, running
18           around in this system.
19                 THE COURT:  At this time, the
20           sentence will stand, sir.  I will recommend
21           that the Probation Department send copies
22           of the records to the Department of
23           Corrections.
24                 The probation officer says there is a
25           new program in effect, and I would
```

1      certainly encourage that program.  If they

2      see fit to modify and make recommendations,

3      certainly the Court will review them.  But

4      at this time, the sentence will stand.

5          All right.

6          MR. BURKE:  Thank you, Judge.

7          (Proceedings concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1

 2                        CERTIFICATE

 3              I, DEBORAH A. KAHLES, RPR, the

 4   undersigned, an Official Court Reporter for the

 5   Hamilton County Court of Common Pleas, do hereby

 6   certify that at the time and place stated herein,

 7   I recorded in stenotype and thereafter transcribed

 8   the within Transcript of Proceedings and that is a

 9   true, complete, and accurate transcript of my said

10   stenotype notes.

11              IN WITNESS WHEREOF, I hereunto set

12   my hand this 10th day of August, 2004.

13

14              _____
                DEBORAH A. KAHLES, RPR
15              Official Court Reporters
                Court of Common Pleas
16              Hamilton County, Ohio

17

18

19

20

21

22

23

24

25
```