# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

———————————————

Louis Merriweather,
    Petitioner

    vs                    Case No. 1:02cv369
                            (Spiegel, S.J.; Hogan, M.J.)

Tim Brunsman,[1]
    Respondent

———————————————

## REPORT AND RECOMMENDATION
———————————————

    Petitioner, an inmate currently in state custody at the Chillicothe Correctional Institution in Chillicothe, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. During the pendency of this action, petitioner filed a motion to amend the original petition to add three claims, which was granted. (*See* Docs. 17, 23). Thereafter, realizing that the additional claims triggered exhaustion concerns, petitioner filed a motion to voluntarily dismiss the petition so that he could exhaust state court remedies. (Doc. 34). The petition was dismissed without prejudice on February 14, 2005, but the case was reopened on September 30, 2005 when the Court granted petitioner's "petition for renewal" of the action. (*See* Docs. 35, 37, 39, 41).

    It appears at this juncture that the matter is finally ripe for adjudication. Pending before the Court for consideration is the petition as amended (Docs. 2, 17); respondent's return of writ, supplemental returns of writ, and response to petitioner's

———————————————

[1] In the original petition, petitioner properly named as respondent Robert Hurt, who was then Warden of Chillicothe Correctional Institution (CCI), where petitioner is incarcerated. However, since the time petitioner instituted this action, Robert Hurt was replaced by James Erwin, who in turn was replaced by Tim Brunsman as CCI's Warden. Because Tim Brunsman is the individual who currently has custody of petitioner, the caption of this case is hereby changed to reflect the proper party respondent. *See* Rule 2, Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.

"Petition for Renewal" (Docs. 9, 24, 27, 29, 43); and petitioner's "traverse" in response to the original return of writ and supplemental responses (Docs. 10, 11, 25). In addition, petitioner has filed a motion to "voluntarily dismiss all claims not asserted in original petition of May 12, 2002 a[s] amended on April 28, 2004" (Doc. 42).

## Factual And Procedural Background

On April 2, 1997, petitioner was indicted by the Hamilton County, Ohio, grand jury on four counts of rape as defined in Ohio Rev. Code § 2907.02(A)(1)(b), with a sexually violent predator specification attached to each count. (Doc. 9, Ex. 1). On May 15, 1997, petitioner entered guilty pleas in the Hamilton County Court of Common Pleas to two of the rape counts with specification in exchange for dismissal of the remaining charges. (*Id.,* Ex. 2). On June 18, 1997, petitioner was sentenced to concurrent ten (10) year terms of imprisonment on the two rape charges and was found to be a "sexual predator" under the specifications. (*Id.,* Ex. 3).

Petitioner did not pursue an appeal as of right from his conviction and sentence. Indeed, he took no action to challenge his conviction until nearly four years later, when on March 29, 2001, he filed a *pro se* notice of appeal to the Ohio Court of Appeals, First Appellate District.[2] (*Id.*, Ex. 4). On May 4, 2001, the Ohio Court of Appeals *sua sponte* dismissed the appeal "for failure of the appellant to comply with the Ohio Rules of Appellate Procedure to wit: the Notice of Appeal was not timely filed." (*Id.,* Ex. 5).

Next, on June 14, 2001, petitioner filed a *pro se* motion for leave to file a delayed appeal under the same case number with the Ohio Court of Appeals, First Appellate District. (*Id.,* Ex. 6). Petitioner argued as "cause" for his delay in filing that his "mental state of mind" had been adversely affected during the "over 3 year[]" period in which he was under "Psychotropic medication;" that he was unaware he had a right to appeal his conviction stemming from his guilty plea; and that neither the trial court nor his defense counsel informed him of his "right to appeal in this matter as long as the notice of appeal was filed within thirty (30) days from the date of entry of judgment." (*Id.*).

_____

[2]It appears from the state docket records that petitioner did file a motion for judicial release on December 6, 2000 with the trial court, which was denied on December 21, 2000. (*See* Doc. 43, Ex. A, attached "Appearance Docket").

Petitioner went on to allege as proposed assignments of error that: (1) his guilty plea was "involuntary," because he was "under psychotropic medication which had an adverse effect on his . . . mental state" at the time he entered his plea; (2) his trial counsel was ineffective because he deprived petitioner of his "right to a timely appeal" and "deceived [petitioner] on his right to an appeal by telling [him] he could not appeal guilty plea sentencing;" (3) he was denied due process when he was adjudicated to be a "sexual predator" without a hearing; (4) the trial court abused its discretion by not permitting him "access to presentence investigation report in a reasonable time before sentence was imposed;" (5) the trial court abused its discretion by "not considering mitigating factors p[u]rsuant to Ohio Revised Code" when imposing the maximum sentence; (6) he was denied due process when the trial court refused to permit his psychiatric evaluation prior to sentencing; (7) he was denied due process when prior to his arrest, the investigating police officers obtained his confession while he was "in an alcoholic and drug state of mind;" and (8) he was denied his constitutional right of appeal due to the trial court's and defense counsel's failure to inform him that he had such a right.  (*Id.*).

On July 20, 2001, the Ohio Court of Appeals entered an order *sua sponte* striking petitioner's motion for leave to appeal "for failure to comply with the Rules of Appellate Procedure to wit: App. R. 5 which requires the concurrent filing of the motion for delayed appeal and the Notice of Appeal." (*Id.,* Ex. 8).  The court reasoned that the rules required that the motion for delayed appeal and notice of appeal be filed "as a new case."   Because  the motion for delayed appeal had been filed in an appeal, "which had previously been dismissed," it was deemed deficient.  (*Id.*).

On September 28, 2001, petitioner again attempted to obtain appellate review in the state courts by filing under a new case number a notice of appeal and motion for leave to appeal to the Ohio Court of Appeals, First Appellate District, raising the same arguments and issues that he had presented in his prior motion for delayed appeal.  (*Id.,* Ex. 9).  On November 2, 2001, the Ohio Court of Appeals overruled petitioner's motion for leave to appeal on the ground that petitioner had "failed to provide sufficient reasons for failure to perfect an appeal as of right." (*Id.,* Ex. 10).[3]

Petitioner sought leave to appeal to the Ohio Supreme Court, claiming in his

---

[3]Petitioner apparently filed a motion for reconsideration of this decision, which was denied by the Ohio Court of Appeals on February 8, 2002.  (*See* Doc. 9, Exs. 11, 12).

memorandum in support of jurisdiction as the sole proposition of law that it was "plain error" for the Court of Appeals to deny his motion for delayed appeal "without first making a[] factual determination" as to whether petitioner was advised or was otherwise aware of his right of appeal. (*See id.,* Ex. 13). On March 4, 2002, the Ohio Supreme Court denied petitioner leave to appeal and dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 14).

Petitioner next initiated the instant federal habeas corpus action. The original petition, which was signed by petitioner on April 11, 2002 and stamped as "filed" on May 13, 2002, contains the following grounds for relief:

> **Ground One:** Be[]ing induced/coerced while under psychotropic medication. I was under prescribed psychotropic medication during all trial court proce[e]ding[s]. [M]y defense counsel had full[] knowledge of this medication, but yet he still induced/coerced me into plea[d]ing guilty, nor did he orally inform me that I had a right to appeal[,] nor did I know I had the right to appeal guilty plea/sentencing.

> **Ground Two:** [Neither] tr[ia]l court nor defense counsel personally orally informed me that I had a[] right to appeal guilty plea agreement and sentencing, and I did not know that I had this right until I saw Davis V. Brigano Case No. C-1-98-686 (Beckwith, J.; Hogan, M.J.).

> **Ground Three:** Ineffective Assistance of Counsel . . . by not informing me of right to appeal [and] in[]ducing/coercing me into plea[d]ing guilty while knowing I was under psych medication. Allowing trial court to adjudicate me as a sexual predator w/out due process[.] Not permitting me to view Presentence Investigat[ion] Report in a reasonable time before sentencing . . . nor to comment on said report. [A]nd not persona[l]ly or[a]lly informing me that I had a[] right to appeal these violations. During the whole trial court proceeding defense counsel['s] conduct was unprofessional and in[e]ffective[] even permitting trial [court] to impose maximum sentence without trial court considering statutory factors and knowing that my crime was not the wors[t] of the offen[se], and failing to inf[or]m me that I had a right to appeal this violation[].

> **Ground Four:** Be[]ing adjudicated sexual predator without due process,

4

being permitted to question [the] accuser and others as provided by
O.R.C.  Furthermore be[]ing adjudicated without clear and convincing
evidence, there should have been a hearing before adjudic[a]ting me a
sexual predator.

**Ground Five:**  Trial court abused its discretion in sentencing[.]

**Ground Six:**  Defendant should have been granted psychiatri[c]
examination and such examination should have [been] performed at
Community Diagnostic and [T]reatment Center . . . pursuant to O.R.C.
before sentencing.  This examination was requested but was not
performed.

**Ground Seven:**  Defendant was denied access to his p[re]-sentence
report before sentencing within a reasonable time.

**Ground Eight:**  Statements made[] to investi[ga]ting officers[] on
March 27, 1997 were induced/coerced while defendant was in a drug and
alc[o]hol state of mind. . . . [T]herefore defendant[’s] statements were
not willingly and voluntar[]ily [given]. . . .

**Ground Nine:** Motion for judic[i]al release [which was considered at a
hearing held on December 21, 2000] was untimely; O.R.C.  2929.20.

(Doc. 2, pp. 5-6(B)).

On September 2, 2003, petitioner filed a motion to amend the petition to add
three more grounds for relief, which was granted on April 28, 2004.  *(See* Docs. 17,
23).  In these additional grounds for relief, petitioner essentially claims as follows:

**Ground Ten:**  Ineffective assistance of petitioner’s trial counsel in
inducing petitioner to plead guilty “without ‘benefit’ of discovery.”

**Ground Eleven:**  Ineffective assistance of petitioner’s trial counsel in
failing to “reasonabl[y] investigate alleged eyewitnesses.”

**Ground Twelve:**  The trial court lacked subject matter jurisdiction over
the criminal case against petitioner because he was arrested and charged

on March 27, 1997 and indicted on April 2, 1997 "without [being provided upon his request with a copy of] the charging instrument of an affidavit or complaint, listing all the alleged elements of the alleged offenses."

(*See* Doc. 17).

On September 9, 2003, a week after he filed his motion for leave to amend the petition in this action, petitioner sought post-conviction relief in the state courts. (*See* Doc. 43, Ex. A). On September 23, 2003, the Hamilton County Common Pleas Court denied petitioner's post-conviction motion, as well as his request for evidentiary hearing, on the grounds that the motion "was not timely filed" and that "no grounds exist for the relief requested." (*Id.,* Ex. B).

On December 23, 2003, petitioner filed an untimely notice of appeal, and on December 26, 2003, filed a request for leave to pursue a delayed appeal in the Ohio Court of Appeals, First Appellate District. (*Id.,* Exs. C, E). The Ohio Court of Appeals granted the delayed appeal and, on April 20, 2005, affirmed the trial court's judgment dismissing the post-conviction petition on timeliness grounds. (*Id.,* Exs. F, I).[4] Petitioner sought leave to appeal this decision to the Ohio Supreme Court. (*Id.,* Ex. J). On September 7, 2005, the Ohio Supreme Court declined jurisdiction to hear the case and dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. L).

It appears from the record that petitioner also filed yet another notice of appeal on July 27, 2005, as well as a motion for leave to appeal pursuant to Ohio R. App. P. 5(A) on August 2, 2005, in the Ohio Court of Appeals, First Appellate District. (*Id.,* Exs. M, O). On August 31, 2005, the Court of Appeals *sua sponte* dismissed these motions as untimely-filed. (*Id.,* Exs. N, P). Respondent states that petitioner did not attempt to appeal these decisions to the Ohio Supreme Court. (Doc. 43, Brief, p. 7).

Instead, on September 16, 2005, petitioner returned to this Court by filing his "Petition for Renewal of Writ Of Habeas Corpus Pursuant to 28 U.S.C. § 2254."

---

[4]On August 23, 2004, during the pendency of his delayed appeal before the Ohio Court of Appeals, petitioner filed his motion for voluntary dismissal with this Court. (*See* Doc. 34). The motion was granted, and the petition was dismissed without prejudice to the extent petitioner sought a dismissal in order to exhaust the pending state remedy. (*See* Docs. 35, 37).

6

(Doc. 39). In response to this petition, the Court reopened the case on September 30, 2005 and ordered petitioner to file an amended petition within twenty (20) days to the extent he sought to raise new claims. (Doc. 41). Petitioner responded by filing a motion to voluntarily dismiss all claims not asserted in his original petition stamped as "filed" on May 13, 2002 (*see* Doc. 2) and in his amendment to the petition allowed on April 28, 2004 (*see* Docs. 17, 23), which the Court hereby RECOMMENDS should be GRANTED.

In response to the petition, respondent has consistently maintained that the petition is barred from review by the applicable one-year statute of limitations set forth in 28 U.S.C. § 2244(d). (*See* Doc. 9, pp. 8-10; Doc. 24, pp. 2-3; Doc. 27, pp. 3-4; Doc. 43, pp. 8-11). Respondent alternatively contends that petitioner has waived his claims for relief due to his procedural defaults in the state courts. (*See* Doc. 9, pp. 10-16; Doc. 24, pp. 3-5; Doc. 43, pp. 11-19).

## OPINION

### A. The Claims Alleged In Grounds One through Eight and Ten Through Twelve Of The Petition, As Amended, Are Time-Barred

Under 28 U.S.C. § 2244(d)(1), as amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a person in custody pursuant to the judgment of a state court must file an application for writ of habeas corpus within one year from the latest of: (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by state action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. Under 28 U.S.C. § 2244(d)(2), the running of the limitations period is tolled during the pendency of a properly filed application for state post-conviction relief or other collateral review.

In this case, the Court must first determine which statute of limitations provision set forth in 28 U.S.C. § 2244(d)(1) applies to each of the twelve grounds for relief alleged in the petition, as amended.  As an initial matter, it appears that except for the claim alleged in Ground Nine of the petition, which this Court assumes, without deciding, is not time-barred, petitioner's claims are based on purported errors that occurred prior to or during the state plea-taking and sentencing proceedings. Normally, such claims are governed by 28 U.S.C. § 2244(d)(1)(A), which provides the statute of limitations begins to run from the date on which the challenged judgment became "final" by the conclusion of direct review or the expiration of time for seeking such review.   However, petitioner also has alleged in Grounds One, Two and Three of the petition that he was denied effective assistance of counsel and his constitutional right of appeal based on the failure of his trial attorney and the trial court to inform him that he had a right to appeal his guilty plea conviction and sentence.  The question then arises as to whether these particular claims are governed by a different provision set forth in 28 U.S.C. § 2244(d)(1)(D), which provides that the statute of limitations does not begin to run until the factual predicate of the claims presented could have been discovered in the exercise of due diligence.[5]

Here, it is clear from the record that contrary to his contention, petitioner was informed both when he entered his guilty pleas and when he was sentenced that he had the right to appeal his conviction and sentence.   Specifically, the guilty plea form entered on the record and executed by petitioner expressly provided in pertinent part:

. . . .I understand my right to appeal a maximum sentence, my other

---

[5]The limitations provision set forth in 28 U.S.C. § 2244(d)(1)(B) has been found to apply in cases where the petitioner has alleged facts indicating his counsel on appeal was ineffective in perfecting or pursuing an appeal and such ineffectiveness actually prevented petitioner from filing a timely habeas petition.  *See, e.g., Waldron v. Jackson,* 348 F.Supp.2d 877, 882-86 (N.D. Ohio 2004); *cf. Winkfield v. Bagley,* 66 Fed.Appx. 578, 582-83 (6th Cir. May 28, 2003) (not published in Federal Reporter), *cert. denied,* 540 U.S. 969 (2003); *Dean v. Pitcher,* No. Civ. 02-71203-DT, 2002 WL 31875460, at *3 (E.D. Mich. Nov. 7, 2002) (unpublished); *Collier v. Dretke,* No. 3:03-CV-2744-L, 2004 WL 1585903, at *2 (N.D. Tex. July 13, 2004) (unpublished Report & Recommendation), *adopted,* 2004 WL 1944030 (N.D. Tex. Aug. 31, 2004); *Felton v. Cockrell,* No. 3:03-CV-0764-L, 2003 WL 21946862, at *3 (N.D. Tex. Aug. 13, 2003) (unpublished Report & Recommendation).  *But cf. Dunker v. Bissonnette,* 154 F.Supp.2d 95, 105 (D. Mass. 2001) (rejecting argument that the petitioner's court-appointed attorney was a "state actor" under § 2244(d)(1)(B)).  No such allegations have been made here.  Therefore, the one-year limitations provision set forth in § 2244(d)(1)(B) is inapplicable to the case-at-hand.

limited appellate rights and that any appeal must be filed within 30 days of my sentence.

\*\*\*\*

I have read this form and I knowingly, voluntarily, and intelligently enter this guilty plea.

(Doc. 9, Ex. 2). In addition, in response to the court's questioning at the plea-taking hearing, petitioner affirmed that he had signed the plea form and that he had "either read [the form] over or talked with his attorney about what" it meant. (*Id.,* Ex. 15, Tr. 7).

At petitioner's sentencing hearing, the trial court expressly advised petitioner again that he had "certain constitutional rights of appeal." (Doc. 29, Tr. 22). The following colloquy then ensued:

> THE COURT: If you're not satisfied with the proceedings of the Court, and you wish to enter an appeal, sir, you're instructed to tell your attorney immediately.
>
> If you cannot afford an attorney, the Court has the duty to provide you with an attorney and also provide you with a written copy of the proceedings at no cost to you. Do you understand that, sir?
>
> THE DEFENDANT: Yes, Your Honor.

(*Id.,* Tr. 22-23).

In light of the record evidence clearly showing that petitioner was informed of and stated that he understood his right of appeal, the Court concludes that any factual predicate underlying petitioner's claims in Grounds One, Two and Three was discoverable in the exercise of due diligence at the time petitioner entered his guilty pleas or, at the latest, when he was sentenced. Petitioner has suggested that because he was under "psychotropic medication" when he entered his pleas and during the three-year period thereafter, he did not understand his appeal rights. Again, petitioner's argument is belied by the record.

9

At the plea-taking hearing, when petitioner indicated to the court that he was "under medication," the trial judge extensively questioned petitioner and defense counsel as follows to determine whether the medication petitioner was taking had any impact on petitioner's understanding of the terms of the plea agreement or the proceedings in general:

THE COURT: What kind of medication?

THE DEFENDANT: I don't know what kind.

THE COURT: You don't know what it is?

THE DEFENDANT: It's 50 milligrams of one, and it's two more involved in there.

THE COURT: All right.  What generally, is it being prescribed for? What kind of problems?

THE DEFENDANT: Because at one time I was hearing voices, and then they prescribed this medication for me, plus antidepressant.

DEFENSE COUNSEL: I don't know the drug.  It's an antidepressant drug based on – after his arrest he was despondent about the crimes charged here, and he was very depressed when they brought him into the Justice Center.  He was not on suicide watch or anything.  They gave him some antidepressant drugs at one time.  He's still on them, but the dosage is down.  During the times I've talked to Mr. Merriweather, he's been very clear and responsible.  He's an educated man that does understand what is going on today.

THE COURT: That was going to be my next question.  How long have you been locked up?

THE DEFENDANT: Since March 23rd.

THE COURT: Tell me where you are this morning.

10

THE DEFENDANT: In your courtroom, sir.

THE COURT: What is my name?

THE DEFENDANT: Judge Robert Kraft.

THE COURT: And have you been in the room before, or is this the first time?

THE DEFENDANT: This is the first time.

THE COURT: And who is the gentleman standing to your left?

THE DEFENDANT: My attorney.

THE COURT: Do you know his name?

THE DEFENDANT: Daniel Burke.

THE COURT: Was he appointed or retained?

THE DEFENDANT: Appointed.

THE COURT: You've been satisfied with his services up to this time?

THE DEFENDANT: Yes, I have.

THE COURT: How old are you, Mr. Merriweather?

THE DEFENDANT: Forty-nine.

THE COURT: And you can read and write; is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: How far did you go in school, sir?

THE DEFENDANT: One and a half years of college.

THE COURT: Are you on probation or parole for anything at this time?

THE DEFENDANT: No, Your Honor.

THE COURT: And do you have any other cases that have come to trial?

THE DEFENDANT: No, Your Honor.

THE COURT: And you do appear to be clear this morning and communicating with me very coherently. Is there anything that you want to tell me about how you feel right now other than the fact that you're on medication and its seems to be giving you some relief? Is that the idea?

THE DEFENDANT: Yes, sir.

THE COURT: And, Mr. Burke, are you appointed or retained?

DEFENSE COUNSEL: I'm appointed, Judge, he's correct.

THE COURT: And based upon the discussion you've had with your client privately and those we've had on the record, do you feel he is knowingly, intelligently and voluntarily proceeding today?

DEFENSE COUNSEL: Yes. As stated earlier, he's an educated man. We've had good conversation about the nature of the crimes charged here and the allegations alleged, and I think he knowingly, intelligently and voluntarily waives all his rights today.

(*Id.,* Tr. 13-16).

During his sentencing hearing, petitioner further demonstrated his complete comprehension of what was going on and said there. When asked if he had anything to add to his counsel's statements, petitioner indicated with respect to his medication only that it made his "mouth dry." (Doc. 29, Tr. 8). Petitioner continued by providing a coherent and appropriate response to the court's question and follow-up questions. (*Id.,* Tr. 8-9, 14). Neither the testimony provided by petitioner's mother and sister nor the psychiatric evaluation conducted by Dr. Chiappone, which was discussed at the hearing, even remotely suggested that petitioner had any problems in understanding

12

or comprehending information relayed to him. (*See id.,* Tr. 5-8, 9-14).

Because it is thus clear from the record that petitioner understood the proceedings wherein he was informed of his right of appeal, the claims for relief that are alleged in Grounds One through Eight and Ten through Twelve of the petition, as amended, are all governed by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A). In so ruling, the Court is aware of the Sixth Circuit's recent decision in *DiCenzi v. Rose*, 419 F.3d 493, 497-500 (6th Cir. 2005), vacating the district court's dismissal of claims stemming from counsel's and the court's alleged failure to inform the petitioner of his appeal rights as time-barred under § 2244(d)(1)(A) and remanding the matter for determination as to whether petitioner had acted with due diligence in discovering his right of appeal, thereby triggering the applicability of the later limitations period set forth in § 2244(d)(1)(D). The Court is also aware that in *Wolfe v. Randle,* Case No. 1:00cv410 (S.D. Ohio) (Spiegel, J.) (Doc. 9, Report & Recommendation issued March 12, 2001 adopted by Order of July 3, 2001), petitioner's claim alleging a denial of his right to appeal was considered timely under 28 U.S.C. § 2244(d)(1)(D), because the statute of limitations did not begin to run until the Ohio Supreme Court issued its final ruling in the state court proceedings denying petitioner's motion for delayed appeal. However, unlike this case, the record was not developed in *DiCenzi* as to when petitioner was made aware of his appeal rights, and in *Wolfe,* it was determined that petitioner had not been informed of his right to an appeal by either his counsel or the trial court, *see Wolfe v. Randle*, 267 F.Supp.2d 743 (S.D. Ohio 2003).

This case is more analogous to another action before this District Court–*Goins v. Sanders,* 1:01cv185 (S.D. Ohio July 23, 2004) (Weber, J.) (Doc. 41). In *Goins,* the Court refused to reopen a case determined to be time-barred under 28 U.S.C. § 2244(d)(1)(A), because in contrast to *Wolfe,* the petitioner had been "specifically informed of his appeal rights at his plea hearing and in writing prior thereto." (*Id.,* p. 2). As in *Goins,* the present record is sufficient to demonstrate that petitioner was informed of and understood his appeal rights before his conviction became "final" under 28 U.S.C. § 2244(d)(1)(A) by the conclusion of direct review or the expiration of time for seeking such review.

Under § 2244(d)(1)(A), petitioner's conviction became "final" on July 18, 1997, when the thirty (30) day period expired for filing an appeal as of right to the Ohio Court of Appeals from the trial court's final Judgment Entry issued June 18, 1997. *See* Ohio R. App. P. 4(A). The statute of limitations commenced running the

following day on July 19, 1997, *see* Fed. R. Civ. P. 6; *Bronaugh v. Ohio,* 235 F.3d 280, 285 (6th Cir. 2000), and expired one year later on July 19, 1998 absent the application of the statutory tolling provision set forth in 28 U.S.C. § 2244(d)(2) or any other applicable tolling principles.[6]

During the one-year limitations period, petitioner was entitled to the benefits of the tolling provision set forth in 28 U.S.C. § 2244(d)(2) based on any pending "properly filed" applications for state post-conviction relief or other collateral review. *See* 28 U.S.C. § 2244(d)(2); *Bennett v. Artuz,* 199 F.3d 116, 119 (2nd Cir. 1999), *aff'd,* 531 U.S. 4 (2000); *Gaskins v. Duval,* 183 F.3d 8, 10 (1st Cir. 1999); *Fields v. Johnson,* 159 F.3d 914, 916 (5th Cir. 1998) (per curiam); *Gendron v. United States,* 154 F.3d 672, 675 & n.3 (7th Cir. 1998) (per curiam), *cert. denied,* 526 U.S. 1113 (1999); *Hoggro v. Boone,* 150 F.3d 1223, 1226 (10th Cir. 1998); *Lovasz v. Vaughn,* 134 F.3d 146, 148-49 (3rd Cir. 1998); *cf. Morris v. Bell,* 124 F.3d 198 (table), No. 96-5510, 1997 WL 560055, at *3 (6th Cir. Sept. 5, 1997) (unpublished), *cert. denied,* 522 U.S. 1149 (1998). The tolling provision, however, does not "'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully expired." *Rashid v. Khulmann,* 991 F. Supp. 254, 259 (S.D.N.Y. 1998); *see also Smith v. McGinnis,* 208 F.3d 13, 16-17 (2nd Cir.) (and cases cited therein), *cert. denied,* 531 U.S. 840 (2000); *Sorce v. Artuz,* 73 F.Supp.2d 292, 294 (E.D.N.Y. 1999) (and cases cited therein); *Blasi v. Attorney General of Pennsylvania,* 30 F.Supp.2d 481, 485 (M.D. Pa. 1998). Once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the statute of limitations bar. *Rashid,* 991 F. Supp. at 259; *cf. Cox v. Angelone,* 997 F. Supp. 740, 743-44 (E.D. Va. 1998); *Healy v. DiPaolo,* 981 F. Supp. 705, 706-07 (D. Mass. 1997).

In this case, the statute of limitations ran its course years before petitioner took any action to challenge his conviction or sentence. As discussed above, *see supra* pp. 13-14, the statute commenced running on July 19, 1997 and expired one year later on

---

[6]To the extent petitioner contends that his subsequent motions for delayed appeal caused the limitations period to begin running anew, his argument must fail. In *Searcy v. Carter,* 246 F.3d 515, 518-19 (6th Cir.), *cert. denied,* 534 U.S. 905 (2001), the Sixth Circuit held that delayed appeal motions do not retrigger the statute's running, but rather can only serve to toll the limitations period. In *DiCenzi,* the Sixth Circuit further emphasized that a motion for delayed appeal, *"even if granted*, does not restart the statute of limitations, but if properly filed, it does toll the statute during the time the motion was pending." *DiCenzi,* 419 F.3d at 496 (emphasis added).

July 19, 1998. Therefore, no time remained in the limitations period that could be tolled when petitioner filed his first notice of appeal with the Ohio courts on March 29, 2001, well over two and one-half years after the statute of limitations had ceased running.

The statute of limitations may be equitably tolled in limited circumstances. *Dunlap v. United States,* 250 F.3d 1001, 1008 (6th Cir.), *cert. denied*, 534 U.S. 1057 (2001); *Andrews v. Orr,* 851 F.2d 146, 151 (6th Cir. 1988). In determining whether the statute of limitations should be equitably tolled, the court must consider the following factors:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) the petitioner's diligence in pursuing his rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Dunlap,* 250 F.3d at 1008 (citing *Andrews,* 851 F.2d at 151). The absence of prejudice to respondent is not an independent basis for invoking the doctrine of equitable tolling. *Dunlap,* 250 F.3d at 1009; *Andrews,* 851 F.2d at 151(citing *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 152 (1984)). The absence of prejudice may only be considered when other factors of the test are met. *Id.*

Petitioner does not argue that he is entitled to equitable tolling and has made no attempt to apply the five equitable tolling factors to his case. There is no evidence in the record to suggest that petitioner lacked notice or constructive knowledge of the one-year filing requirement for federal habeas corpus petitions. In any event, it would have been unreasonable for petitioner to remain ignorant of the filing requirement, which has been in effect since April 1996, until April 2002 when he signed the original petition. Petitioner also has failed to demonstrate that he acted with due diligence in pursuing his federal remedy.

Petitioner has suggested that he may be entitled to equitable tolling because he was taking "psychotropic medication" that rendered him mentally incapable of challenging his conviction for a period of over three years after his guilty pleas were accepted and sentence was imposed. "Illness–mental or physical–tolls a statute of limitations only if it actually prevents the sufferer from pursuing his legal rights during the limitations period." *Price v. Lewis,* 119 Fed.Appx. 725, 726 (6th Cir. Jan.

15

5, 2005) (not published in Federal Reporter) (and cases cited therein), *cert. denied,* 126 S.Ct. 221 (2005); *Taravella v. Eberlin,* No. 2:05-CV-0588, 2006 WL 39262, at *4 (S.D. Ohio Jan. 6, 2006) (Kemp, M.J.) (unpublished Report & Recommendation) (and cases cited therein), *adopted,* 2006 WL 218010 (S.D. Ohio Jan. 27, 2006); *Raines v. Warren Corr. Instit.,* No. 2:05-CV-933, 2005 WL 2709614, at *3-4 (S.D. Ohio Oct. 21, 2005) (King, M.J.) (unpublished Report & Recommendation) (and cases cited therein), *adopted,* 2005 WL 3307272 (S.D. Ohio Dec. 6, 2005); *cf. Bilbrey v. Douglas,* 124 Fed.Appx. 971 (6th Cir. Mar. 7, 2005) (per curiam) (not published in Federal Reporter), *cert. denied,* 126 S.Ct. 437 (2005). As discussed above, *see supra* pp. 9-13, the record belies petitioner's contention that his use of "psychotropic medication" negatively impacted his mental capacity or understanding of the plea-taking and sentencing proceedings. Petitioner has neither argued nor presented any evidence even remotely suggesting his mental condition worsened immediately after the state criminal proceedings concluded. Therefore, he has not met his burden of showing that his mental condition actually prevented him from pursuing his legal rights during the one-year limitations period beginning July 19, 1997. *Cf. Price,* 119 Fed.Appx. at 726. Equitable tolling is inappropriate in this case.

Accordingly, in sum, the Court concludes that petitioner's claims alleged in Grounds One through Eight and Ten through Twelve of the petition, as amended, which are governed by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A), are time-barred. Neither the statutory tolling provision set forth in 28 U.S.C. § 2244(d)(2) nor equitable tolling principles apply to justify excusing the statute of limitations bar in this case.

### B. Petitioner Has Waived All His Claims For Habeas Relief Due To His Procedural Defaults In The State Courts

In his responses to petitioner's pleadings, respondent argues as an alternative ground for dismissal of the petition that petitioner has waived his claims for relief due to his procedural defaults in the state courts. (*See* Doc. 9, pp. 10-16; Doc. 24, pp. 3-5; Doc. 43, pp. 11-19). In light of the evolving case-law in the statute of limitations area and because it is assumed in this case that the claim alleged in Ground Nine of the petition is not time-barred, *see supra* p. 8, the Court will address this argument as an additional basis for disposing of petitioner's claims for relief.

In recognition of the equal obligation of the state courts to protect the

16

constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c)*; see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985); *see also O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999).

If petitioner fails to fairly present his claims through the requisite of levels of state appellate review to the state's highest court, or commits some other procedural default to preclude review of the merits of petitioner's claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the claims are subject to dismissal with prejudice as waived. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). If, because of a procedural default, petitioner has not had his claims considered by the state's highest court on the merits and he can no longer present his claims to the state courts, he has waived the claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner committed numerous procedural defaults. First, petitioner committed procedural defaults with respect to any of his claims that he sought to raise in his belated notice of appeal filed on March 29, 2001, his first motion for leave to file a delayed appeal filed on June 14, 2001, his second motion for delayed appeal to the Ohio Court of Appeals filed on September 28, 2001, and notice of appeal and third motion for leave to appeal that were filed, respectively, in July and August 2005. The notice of appeal and motion for leave to file a delayed appeal initially filed by petitioner were rejected by the Ohio Court of Appeals based on petitioner's non-compliance with certain procedural requirements set forth in the Ohio Rules of Appellate Procedure. (*See* Doc. 9, Exs. 5, 8). The Ohio Court of Appeals did

17

consider petitioner's second motion for delayed appeal, but refused to address the merits of petitioner's claims because petitioner had not filed a timely appeal under Ohio R. App. P. 4(A) and "failed to provide sufficient reasons for failure to perfect an appeal as of right." (*See id.*, Ex. 10). Finally, the Ohio Court of Appeals *sua sponte* dismissed petitioner's most recent attempt to obtain appellate review on the ground that the notice of appeal filed in July 2005 and petitioner's third motion for leave to appeal filed in August 2005 were untimely filed. (*See* Doc. 43, Exs. N, P).

It is well-settled that, on federal habeas corpus review, a court may be barred from considering an issue of federal law from a judgment of a state court if the state judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *Harris,* 489 U.S. at 260-62. The "adequate and independent state ground" doctrine has been applied to state decisions refusing to address the merits of a federal claim because of violations of state procedural rules. *Id.* at 261; *Sykes,* 433 U.S. at 86-87; *see also McBee,* 763 F.2d at 813. Such a procedural default does not bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on the state procedural bar. *Harris,* 489 U.S. at 263. In cases where the last state court to render a reasoned opinion on the claim explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).

The rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the state courts is deemed adequate or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th Cir.), *cert. denied,* 531 U.S. 940 (2000)), *rev'd on other grounds,* 126 S.Ct. 602 (2005) (per curiam); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992), *cert. denied,* 507 U.S. 932 (1993). To be deemed "regularly followed," a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410 n. 6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000), *cert. denied,* 531 U.S. 1082 (2001). In addition, adequacy requires application of the rule "evenhandedly to all similar claims." *Hathorn v. Lovorn,* 457 U.S. 255, 263 (1982); *Maes v. Thomas,* 46 F.3d 979, 986 (10th Cir.), *cert. denied,* 514 U.S. 1115 (1995).

In this case, the Ohio Court of Appeals was the only state court to render a reasoned decision rejecting petitioner's various attempts to obtain a delayed appeal.[7] The court clearly and expressly relied on petitioner's procedural default in failing to file a timely appeal when it denied petitioner leave to appeal, and the Ohio Supreme Court's only decision summarily dismissing petitioner's appeal from the denial of his second motion for delayed appeal must be presumed to rest on the same procedural default. *Cf. Taqwiim v. Johnson,* 229 F.3d 1154 (table), No. 99-3425, 2000 WL 1234322, at **3 (6th Cir. Aug. 22, 2000) (unpublished) (citing *Levine v. Torvik,* 986 F.2d 1506, 1517 n.8 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), and *overruled in part on other grounds by Thompson v. Keohane,* 516 U.S. 99 (1995), and *Ylst,* 501 U.S. at 803-04), *cert. denied,* 531 U.S. 1089 (2001).

The state appellate court's refusal to grant petitioner a delayed appeal because he had not provided sufficient reasons for his failure to perfect an appeal as of right constitutes an "adequate" basis for the court's decision. As discussed above in addressing the statute of limitations issue asserted by respondent as a defense, *see supra* pp. 8-13, the record clearly shows that petitioner was informed, and stated that he was aware, of his right to an appeal both during the plea-taking process and at sentencing. Moreover, although it is conceded that petitioner was taking anti-depressant medication at the time he entered his plea and sentencing, it is also clear from the record that he understood the terms of the plea agreement he signed as well as everything that was said and occurred at the plea-taking and sentencing hearings. Therefore, petitioner cannot argue that the basis for the Court of Appeals' decision was inadequate under the circumstances of this case.[8]

Second, petitioner committed a procedural default with respect to any of his claims for relief that were raised in the state post-conviction proceeding initiated by

---

[7]Indeed, petitioner only attempted an appeal to the Ohio Supreme Court from the Ohio Court of Appeals' decision on November 2, 2001 overruling his second motion for leave to file a delayed appeal. In denying petitioner leave to appeal, the Ohio Supreme Court did not render a reasoned decision, but merely summarily dismissed the appeal "as not involving any substantial constitutional question." (*See* Doc. 9, Ex. 14).

[8]In any event, petitioner committed another procedural default with respect to most of the claims that he attempted to raise on delayed appeal because he only argued as the sole proposition of law on further appeal to the Ohio Supreme Court that the Ohio Court of Appeals erred in denying his motion for delayed appeal "without first making a[] factual determination" as to whether he was advised or was otherwise aware of his appeal right. (*See* Doc. 9, Ex. 13).

him in September 2003 long after the instant action commenced.  The post-conviction motion was denied by the state trial court because it was not timely filed, and the Ohio Court of Appeals agreed that the motion was properly dismissed as untimely filed. (*See* Doc. 43, Exs. B, I).

The Ohio courts clearly and expressly relied on the adequate and independent state statutory requirements set forth in Ohio Rev. Code §§ 2953.21 and 2953.23 in rejecting petitioner's motion for post-conviction relief on procedural timeliness grounds.  The Ohio Supreme Court's later unexplained entry declining jurisdiction and dismissing the appeal "as not involving any substantial constitutional question" (*see id.,* Ex. L) must be presumed to rely on the same procedural default.  *See supra* p. 19.

Because petitioner thus procedurally defaulted his grounds for federal habeas relief in the state courts, this Court concludes that he has waived such claims unless he can show cause for the defaults and actual prejudice as a result of the alleged errors, or demonstrates that failure to consider his claims will result in a "fundamental miscarriage of justice."  *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Petitioner has not demonstrated a fundamental miscarriage of justice will occur or in other words, that the alleged constitutional violations "probably resulted in the conviction of one who is actually innocent" of the charged rape offenses, if his procedurally-defaulted claims for relief are not addressed on the merits by this Court. *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995). Moreover, as discussed above, *see supra* pp. 8-13, 19, petitioner has failed to establish "cause" for his procedural defaults in the state courts.

Accordingly, in sum, the Court concludes that the petition is subject to dismissal with prejudice, because petitioner has waived all his grounds for relief due to his procedural defaults in the state courts.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's motion "to dismiss all claims not asserted in original petition of May 12, 2002 a[s] amended on April 28, 2004" (Doc. 42) be GRANTED.

2.  Petitioner's petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254, as amended (Docs. 2, 17) be DISMISSED with prejudice.

3.  A certificate of appealability should not issue with respect to any Order adopting this Court's Report and Recommendation to dismiss the petition with prejudice on procedural waiver grounds, because under the first prong of the applicable two-part standard established in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[9]  To the extent the Court adopts only the undersigned's Report and Recommendation to dismiss Grounds One through Eight and Ten through Twelve of the petition on procedural statute of limitations grounds, a certificate of appealability should issue, because under *Slack,* 529 U.S. at 484-85, "jurists of reason would find it debatable whether this Court is correct in its procedural ruling" and whether the otherwise-barred grounds for relief state "viable claim[s] of the denial of a constitutional right" or are "adequate to deserve encouragement to proceed further," *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983).  *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

4.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting the Report and Recommendation to dismiss the petition on procedural waiver grounds would not be taken in "good faith," and therefore DENY

---

[9]Because this Court finds that the first prong of the two-part *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated viable constitutional claims in the petition.  *See Slack,* 529 U.S. at 484.  However, to the extent the undersigned's Report and Recommendation on the waiver issue is not adopted by the Court, it is noted that the claim challenging the denial in December 2000 of petitioner's motion for judicial release, which is alleged in Ground Nine of the petition and assumed to be timely-filed under the applicable statute of limitations set forth in 28 U.S.C. § 2244(d)(1), fails to state a cognizable constitutional claim that may be redressed in this federal habeas corpus proceeding. *See* 28 U.S.C. § 2254(a); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Greer v. Mitchell,* 264 F.3d 663, 681 (6th Cir. 2001) (writ of habeas corpus is not the proper means by which prisoners may challenge errors or deficiencies in state post-conviction proceedings, because the claims address collateral matters and not the underlying conviction giving rise to the prisoner's incarceration), *cert. denied,* 535 U.S. 940 (2002); *Kirby v. Dutton,* 794 F.2d 245, 247 (6th Cir. 1986) (same); *Johnson v. Collins,* 145 F.3d 1331 (table), No. 96-3513, 1998 WL 228029, at **1 (6th Cir. Apr. 27, 1998) (unpublished) (same).

petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997). However, to the extent the Court should adopt only the Report and Recommendation to dismiss Grounds One through Eight and Ten through Twelve of the petition as time-barred, petitioner should be GRANTED leave to appeal *in forma pauperis* upon a showing of financial necessity. *See id.*

Date: 2/28/2006             s/Timothy S. Hogan

    cbc                     Timothy S. Hogan
                            United States Magistrate Judge

J:\BRYANCC\2006 habeas orders\02-369denypet.sol-waiv.gp-applrt.wpd

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

---

Louis Merriweather,
    Petitioner,

                                   Case No. 1:02cv369

        v.                            (Spiegel, S.J.; Hogan, M.J.)

Tim Brunsman,
    Respondent.

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

1: 02 cv 369 Doc. 44

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee<br>B. Received by ( *Printed Name* )  C. Date of Delivery |
| 1. Article Addressed to:<br><br>Louis Merriweather<br># 348-451<br>Chillicothe Corr. Inst,<br>PO Box 5500<br>Chillicothe, OH 45601 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |
|  | 3. Service Type<br>☐ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D.<br>4. Restricted Delivery? (*Extra Fee*) ☐ Yes |
| 2. Article Number<br>(*Transfer from service label*) | 7001 2510 0008 6348 2405 |

PS Form 3811, August 2001          Domestic Return Receipt          102595-02-M-1540